UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY

CENTRAL STATES, SOUTHEAST : CASE NO. 04-58-DLB
AND SOUTHWEST AREAS PENSION
FUND, et al. : (Judge Bunning)

Plaintiffs :

**ELECTRONICALLY FILED**

vs. :

**REPLY TO PLAINTIFFS'**
ALVERA SIERMANN : **MEMORANDUM IN OPPOSITION TO**
**DEFENDANT'S MOTION FOR**
Defendant : **SUMMARY JUDGMENT**

:

## I.    INTRODUCTION

Plaintiff Central States, Southeast and Southwest Areas Pension Fund and Howard

McDougall, one of its Trustees ("Central States") in its reply to Alvera Siermann's ("Siermann")

memorandum in opposition to Central States' motion for summary judgment and its

memorandum in opposition to Siermann's motion for summary judgment, recognizes the

weakness of its position and introduces additional "evidence" it "forgot" to include in its original

motion for summary judgment.[1] Nonetheless, Siermann is entitled to summary judgment in her

favor since the undisputed material facts establish that Siermann received the disputed payments

prior to the insolvency of Siermann Hauling, Inc. or prior to notification of Central States' claim.

Moreover, the distributions complied with applicable corporate law.  Therefore, the undisputed

---

[1] This evidence included an affidavit from "Eugenia Alvarez" which contains nothing more than inadmissible
hearsay.  For example, Ms. Alvarez states that mysterious individuals from Teamsters Local 100 called and spoke to
her about Siermann Hauling.  These individuals allegedly said that Siermann Hauling refused to sign a new contract
and that Local 100 requested withdrawal liability estimates.  Although Teamsters Local 100 has colluded with
Central States to defraud Siermann Hauling, Local 100 is not a party to this lawsuit. Therefore, the statements
attributed to officials of Local 100 in Ms. Alvarez's affidavit are hearsay as well as patently false.  For example,
after Siermann Hauling made its last best offer to Local 100 regarding a new contract, Local 100 rejected the
proposal and struck Siermann Hauling.  Likewise, whether Local 100 requested the amount of withdrawal liability is

material facts establish, as a matter of law, that Siermann did not receive  fraudulently

transferred assets. Accordingly, Central States' claims must be dismissed.

**II.**    **ARGUMENT**

   **A.**        ***CENTRAL STATES HAS FAILED TO ESTABLISH THAT***
***SIERMANN HAULING FRAUDULENTLY TRANSFERRED MONEY***
***TO SIERMANN***

Central States concedes that it must prove by clear and convincing evidence that

Siermann Hauling fraudulently transferred assets to Siermann.  Central States also concedes that

it is its burden to establish that when the transfers were made, that Siermann Hauling was

"insolvent" or that it made the transfers in anticipation of litigation or after litigation was begun.

**Russell Cty. Feed Mill, Inc. v. Kimbler**, 520 S.W.2d 309, 311-12 (Ky. 1975). Central States

presents no evidence to establish that Siermann Hauling was insolvent when the payments were

made to Siermann.  To the contrary, the evidence establishes that Siermann Hauling paid

Siermann over a period of nine months, beginning on January 3, 2001 and ending on September

5, 2001.  (Allie Jackson, p. 33).  It is also undisputed that when Siermann Hauling made these

payments it was a going concern; that is, it paid its bills as they came due.  (Jackson Affidavit,

¶4).[2]

Insolvency in the corporate setting means a company is unable to pay its obligations as

they become due.  **Sease v. John Smith Grain Co**., 17 Ohio App.3d 223, 479 N.E.2d 284 (Ct.

Ap. Darke Cty. 1984).[3]  Moreover, the legal definition of insolvency comports with Allie

Jackson's understanding of insolvency.  (Allie Jackson, p. 113-14).  In this case, there is no

---

irrelevant since Alverez concedes in her affidavit that no one from Central States ever informed Siermann Hauling
of the alleged debt until late in January, 2002.
[2] The affidavit of Allie Jackson is attached as Exhibit "C" to Central States' statement of material facts in support of
its motion for summary judgment.
[3] Because Siermann Hauling is an Ohio corporation, the Ohio definition of insolvency should be applied. R.C.
§1701.98.

dispute that while Siermann Hauling was an ongoing concern, it had no problems paying its creditors. To the contrary, the undisputed evidence establishes that Siermann Hauling had paid all of its known creditors when it paid Siermann. (Allie Jackson, p. 25-28).[4] Therefore, as a matter of law, Siermann Hauling was solvent when it made the disputed payments to Siermann. Accordingly, Central States' claim is without merit and must be dismissed.

Central States argues that because Siermann Hauling's liabilities exceeded its assets as of December 31, 2001, it was insolvent when it paid Siermann the monies in dispute here. This is incorrect. First, as described above, Central States is incorrect as a matter of law as to the definition of "insolvent." Contrary to Central States' argument, insolvency is defined as a company's inability to pay its creditors and not whether its liabilities exceed its assets. **Sease v. John Smith Grain Co**., 17 Ohio App.3d 223, 479 N.E.2d 284 (Ct. Ap. Darke Cty. 1984). Because it is undisputed that Siermann Hauling had paid all of its known creditors when it made its payments to Siermann, it was solvent as a matter of law when it paid Siermann.

Second, since the payments were made prior to when Siermann Hauling's assets exceeded its liabilities, even under Central States' definition of insolvency, Siermann Hauling was solvent when it made the payments. (Allie Jackson, p. 33). It is undisputed that the payments in dispute were made over a period of nine months, beginning on January 3, 2001 and ending on September 5, 2001. (Allie Jackson, p. 33). Central States can only establish that Siermann Hauling's liabilities exceeded its assets (and only just barely then) at the end of September, 2001. (Allie Jackson, Ex. 20). Thus, Central States has presented no evidence that Siermann Hauling's assets exceeded its liabilities on September 5, 2001, that is, when the

---

[4] In fact, because Siermann Hauling paid all of its creditors prior to ceasing operations, no other creditor has instituted a collection action against it except for Central States. (Allie Jackson, p. 25-8).

payments to Siermann ended.[5]  Therefore,  Central States' argument is without merit and should

be dismissed.

As set forth above and in its motion for summary judgment, Central States also must

establish that Siermann Hauling made the transfers in anticipation of litigation or after litigation

was begun.  **Russell Cty. Feed Mill, Inc. v. Kimbler**, 520 S.W.2d 309, 311-12 (Ky. 1975).

Although Central States spends a considerable amount of time describing how Siermann Hauling

*might* have known it incurred withdrawal liability prior to January 22, 2002, and thus knew of

the possible debt when it made the payments, it presents no evidence that it told Siermann

Hauling of the liability prior to then.  Central States does not present this evidence because as

described fully in Siermann's memorandum in support of its motion for summary judgment, as a

matter of law, it could not establish withdrawal liability until January 22, 2002. **Bay Area**

**Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corporation of California, Inc.**,

522 U.S. 192, 195 (1997).  In fact, Central States presents no argument challenging Siermann's

argument that under the Multi-Employer Pension Plan Amendments Act of 1980 (MPPAA), 29

U.S.C. §§1981 *et seq*., Central States could not calculate Siermann Hauling's withdrawal liability

until sometime after the first of 2002.   Therefore, as a matter of law, Siermann Hauling did not

make the payments to Siermann in anticipation of litigation since it did not know of the possible

claims until January 22, 2002.

> **B.**         ***CENTRAL STATES LACKS STANDING TO ASSERT A CLAIM***
> ***THAT SIERMANN HAULING MADE DISTRIBUTIONS PRIOR TO***
> ***PAYING ALL OF ITS CREDITORS***

---

[5] Siermann Hauling is an Ohio corporation and it is still in good standing.  (Robert Siermann, p. 12).  Thus, contrary to Central States' argument, Siermann Hauling did not dissolve but instead stopped all active operations after Teamsters Local 100 instituted a work stoppage against it.  After stopping its operations, it wound up its affairs by paying all its know creditors.  (Allie Jackson, p. 25-8).  It did not pay Central States because it failed to notify Siermann Hauling of the obligation until March 22, 2002.

Central States argues that under Ohio corporate law, Siermann Hauling could not make any distribution of its assets to shareholders until all creditors had been paid.[6] Again Central States is simply incorrect. Although Central States did not plead any claim for improper distribution of assets nor did it allege which section of Ohio law is applicable to this claim, only two sections of Ohio corporate law apply—R.C. §1701.95 and §1701.33. As explained below, neither of these sections apply here since (1) Central States did not plead this as a derivative action; and (2) Siermann Hauling was not insolvent when the distributions were made.

Ohio corporate law provides that directors of a corporation are liable if they vote to distribute assets to a shareholder when winding up the affairs of the corporation prior to the payment of all known obligations of the corporation. R.C. §1701.95(A)(1)(b). This provision provides in pertinent part:

> *(A)(1)  In addition to any other liabilities imposed by law upon directors of a corporation and except as provided in division (B) of this section, directors shall be jointly and severally liable to the corporation as provided in division (A)(2) of this section if they vote for or assent to any of the following:*
>
> *\* \* \**
>
> *(b) A distribution of assets to shareholders during the winding up of the affairs of the corporation, on dissolution or otherwise, without the payment of all known obligations of the corporation or without making adequate provision for their payment;*

A creditor cannot maintain an action pursuant to this section since the liabilities imposed under this section run to the corporation. **Schaefer v. DeChant**, 11 Ohio App.3d 281, 282, 464 N.E.3d 583, 585 (Ct. Ap. Erie Cty. 1983). Because Central States did not bring this action on behalf of Siermann Hauling it cannot maintain an action under R.C. §1701.95. **Id**. Therefore, Central

---

[6] Central States argues that Kentucky law may be applicable regarding this claim. This is incorrect. As stated above, Siermann Hauling is an Ohio corporation in good standing. (Robert Siermann, p. 12). Therefore, Ohio corporate law applies and not Kentucky R.C. §1701.98.

States' argument that it may bring an action under Ohio corporate law to recover assets transferred to shareholders is incorrect and must be dismissed.

Ohio corporate law also provides that no distribution may be made to a shareholder when the corporation is insolvent.  R.C. §1701.33(C).  In this case and as described above and in Siermann's motion for summary judgment, the undisputed material facts establish that Siermann Hauling was not insolvent when it made the payments to Siermann.  Therefore, Central States is incorrect that Siermann Hauling improperly distributed assets to Siermann.  Accordingly, its argument to the contrary should be dismissed.[7]

## III.    CONCLUSION

For all the foregoing reasons and for the reasons set forth in her motion for summary judgment, defendant Alvera Siermann respectfully requests that the Court dismiss the claims of plaintiff Central States, Southeast and Southwest Areas Pension Fund and Howard McDougall, one of its Trustees in its entirety and enter judgment in favor of plaintiff Alvera Siermann.

Respectfully submitted,

OF COUNSEL:

WOOD & LAMPING LLP

/s/   Jeffrey P. McSherry
Jeffrey P. McSherry (84272)
C.J. Schmidt
600 Vine Street, Suite 2500
Cincinnati, Ohio   45202
(513) 852-6052
email: jpmcsherry@woodlamping.com

Attorneys for Defendant Alvera Siermann

---

[7] Central States relies upon **Leyman Corporation v. Piggly-Wiggly Corporation**, 90 Ohio App. 506, 103 N.E.2d 399 (Ct. Ap. Hamilton Cty. 1951) in support of its argument that shareholders may not receive any equity until all creditors are paid.  Central States' reliance upon **Leyman Corporation v. Piggly-Wiggly Corporation**, is misplaced.  **Leyman Corporation v. Piggly-Wiggly Corporation**, concerned an action where the corporate entity was dissolved.  It is undisputed that Siermann Hauling is not dissolved but is still in existence and in good standing. (Robert Siermann, p. 12).  Therefore, **Leyman Corporation v. Piggly-Wiggly Corporation**, is inapplicable here.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Reply to Plaintiff's Memorandum in

Opposition to Defendant's Motion for Summary Judgment has been filed with the Court by

electronic means on this 6th day of September, 2005.  Notice of this filing will be sent to all

parties by operation of the Court's electronic filing system. Parties may access this filing through

the Court's system.

In addition, a copy has been served upon the following counsel of record by ordinary

mail this 6th day of September, 2005:

Cathy L. Rath
Central States, Southeast and Southwest
Areas Pension Fund
9377 W. Higgins Road - Law Department
Rosemont, Illinois   60018-4938
Co-Counsel for Plaintiffs

                          /s/   Jeffrey P. McSherry_____

250384.1